**Guadalupe C. MEDINA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–91–00329–CR.**

Court of Appeals of Texas,
San Antonio.

March 31, 1992.

Vincent Callahan, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Ben Sifuentes, Pat Hancock, Edward F. Shaughnessy, III, Asst. Crim. Dist. Attys., San Antonio, for appellee.

Before REEVES, C.J., and CARR and GARCIA, JJ.

## OPINION

GARCIA, Justice.

Appellant was indicted for the murder of Joe Victela and the attempted murder of Louie Victela, Jr. A jury found appellant guilty of committing the offenses as charged in the indictment and assessed punishment at confinement for life and for twenty years, respectively. Appellant asserts four points of error in his appeal of his conviction. We affirm the judgment of the trial court.

Appellant complains in his fourth point of error that the trial court erred by denying appellant the opportunity to impeach the complainant, Louie Victela, Jr., in violation of Article I, section 10 of the Texas Constitution. He also complains that the trial court did not permit him to show that complainant had "malice, ill feeling, ill will, bias, prejudice, or animus toward appellant and had a malevolent motivation to testify against appellant." Appellant, after the State had rested, attempted to show through another witness that complainant, who testified against appellant on direct examination, "always carried a pistol." Appellant contends that complainant, testified at trial that he never carried a gun. Estella Ramos, complainant's cousin, testified that complainant's reputation in the community for truth and veracity was bad. Although the trial court refused to allow Ramos to testify before the jury about whether she ever saw complainant carry a pistol or weapon, her testimony is preserved in a bill of exception.

Appellant does not indicate where in the record "complainant had testified that he never carried a gun." A review of the record indicates that complainant testified on direct examination that he did not have any kind of weapon with him on the night of the offense. On cross-examination, complainant testified that he does not carry a gun and no longer carries a pocket knife to work. The record does not show that appellant "testified that he never carried a gun." The State objected to Ramos' testimony of whether complainant ever carried a gun on the basis of relevancy because "it has not been linked up to the accused under 19.06." Counsel for appellant responded that the testimony was to impeach complainant's testimony that he never carried a gun.

In the bill of exception, Ramos testified that she has seen complainant carrying various guns. The bill also contains testimony that complainant "bragged" to Ramos about killing members of appellant's family and about the types of guns carried by members of the Victela family. However, appellant's counsel did not ask Ramos on direct examination about any threats to appellant's examination nor about guns which may have been carried by other members of complainant's family.

■ Article VI of the Texas Rules of Criminal Evidence governs impeachment of witnesses. Other than conviction of crime as provided in Rule 609, specific instances of conduct of a witness, for the purpose of attacking his credibility, may not be proved by extrinsic evidence. Tex.R.Crim.Evid.

608(b). Specific acts of misconduct generally cannot be used for impeachment purposes. *See Murphy v. State*, 587 S.W.2d 718, 721 (Tex.Crim.App.1979). Only if a witness makes a blanket statement, such as never having been in trouble, may specific acts of misconduct be admissible. *See Blacklock v. State*, 681 S.W.2d 155, 157 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). The trial court properly sustained the State's objection to Ramos' testimony regarding whether she had ever seen complainant carry a gun: Ramos' testimony did not impeach complainant's testimony because he did not make a blanket statement claiming that he never carried a gun.

Article IV of the Rules of Criminal Evidence governs relevancy of evidence. Rule 406 permits evidence of the habit of a person, whether corroborated or not. Regardless of the presence of eyewitnesses, this testimony is relevant to prove that the conduct of a person on a particular occasion was in conformity with the habit. TEX. R.CRIM.EVID. 406.

■ We agree that the practice of exposing a witness' motivation to testify against a defendant is a proper and important function of the constitutionally protected right of cross-examination. *Hurd v. State*, 725 S.W.2d 249, 252 (Tex.Crim.App.1987). However, appellant's counsel did not attempt to question Ramos on direct examination about complainant's alleged desire to kill appellant and his family. Likewise, defense counsel did not ask Ramos on direct examination whether she knew if other Victela family members carried guns.

■ To preserve any error for appeal, a defendant has the burden to offer a timely objection to the trial court's refusal to allow certain testimony at trial and to obtain a ruling by the court as to the objection, or any error is waived. *See Robinson v. State*, 728 S.W.2d 858, 860 (Tex.App.—Austin 1987, no pet.); TEX.R.APP.P. 52; *see also Lewis v. State*, 814 S.W.2d 513, 516 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Appellant's counsel never made the required offer of proof during trial of the evidence included in the bill of exception as required to preserve this point, that is, the refusal of testimony on complainant's motive for testifying, for this court's review. *See Thompson v. State*, 802 S.W.2d 840, 843 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd); TEX.R.APP.P. 52. Appellant also failed to preserve error regarding whether Ramos' testimony was relevant: His only objection was that Ramos' testimony was for impeachment.[1] We overrule appellant's fourth point of error.

In his first three points of error, appellant complains of the instructions given to the jury at the sentencing phase of his conviction in violation of article I, section 19, of the Texas Constitution, article I, section 10, clause 1, of the United States Constitution, and article I, section 16, of the Texas Constitution (no ex post facto application of the law permitted). He contends that the court's charge to the jury during the punishment phase constitutes

---

1. We note, without making a determination, that Ramos' testimony that complainant carried a .38 revolver might be relevant to show habit. However, Ramos' testimony is unclear as to exactly who carried guns.

Q. [By Mr. Taylor]: ... Did you ever see Louie Victela, Jr. carry a pistol or a weapon at the time that you were living with their family approximately a year before this shooting?
A. Yes, sir.
Q. Okay. Did you see him with one gun or many guns?
A. I've seen him with different guns.
Q. Do you know what kind of guns he carried?
A. Yes, sir.
Q. Would you tell for the record what kind of guns he carried?
A. They usually carry a twelve-gauge—
Q. I'm not talking about "they," I'm talking about Louie, Jr.
A. Louie, Jr.?
Q. Right.
A. A .38 pistol.
Q. A .38 pistol?
A. Yes, sir.
Q. Is that a revolver or an automatic?
A. A revolver.
Q. Okay. And what else? What other guns did he carry?
A. They usually carried automatic guns too.
Q. Did Louie, Jr. carry an automatic gun?
A. Yes, sir.

· · · · ·

harmful error because it contains an instruction on parole and good conduct time, notwithstanding *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1987). The court's charge reads:

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the sentence imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed or 15 years, whichever is less, without consideration of good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot be accurately predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

First, appellant contends that the parole instruction at issue does not insure whether the jurors actually discussed and considered parole law and good conduct time because of its inherently contradictory nature. He asserts that the instruction violates the due course of law provision of article I, section 19, of the Texas Constitution. An amendment to article IV, section 11 of the Texas Constitution, which authorized the re-enactment of article 37.07 of the Texas Code of Criminal Procedure, took effect on November 7, 1989, four months after the date of the offense, but more than eighteen months before the trial in May 1991.

The courts of appeal have found that jury instructions based article 37.07 of the Texas Code of Criminal Procedure permissible because that article has been re-enacted pursuant to the constitutional amendment to article IV, section 11 of the Texas Constitution. *Broussard v. State*, 809 S.W.2d 556, 557–58 (Tex.App.—Dallas 1991, pet. ref'd); *Hawkins v. State*, 807 S.W.2d 874, 876 (Tex.App.—Beaumont 1991, pet. ref'd); *Marks v. State*, 815 S.W.2d 817, 818 (Tex.App.—Eastland 1991, pet. granted); *Mohammad v. State*, 814 S.W.2d 137, 140 (Tex.App.—Houston [14th Dist.] 1991, pet. granted); *Hamilton v. State*, 818 S.W.2d 880 (Tex.App.—Houston [14th Dist.] 1991, pet. filed); *Bruno v. State*, 812 S.W.2d 56, 60 (Tex.App.—Houston [14th Dist.] 1991, pet. granted); *Oakley v. State*, 807 S.W.2d 378, 381 (Tex.App.—Houston [14th Dist. 1991, pet. granted); *Edwards v. State*, 807 S.W.2d 338, 341 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Johnson v. State*, 800 S.W.2d 563, 567 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd).

 Appellant here, as in *Marks*, raises the same contentions as in *Rose*. He argues the defects acknowledged in *Rose* still exist. The Texas Constitution was amended by the citizens of Texas on November 7, 1989, and states in part:

The Legislature shall by law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its action. The Legislature shall have authority to enact parole laws and laws that require or permit Courts to inform juries about the effect

of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense. TEX. CONST. art. I, § 19. Because this amendment represents the latest expression of the will of the people, any provisions of the Constitution previously existing that are in conflict with the amendment must yield to the amendment. *Marks*, 815 S.W.2d at 818, citing *Cramer v. Sheppard*, 140 Tex. 271, 167 S.W.2d 147 (1942). The "due course of law" doctrine is a broad, general provision of the Constitution and is construed to be incompatible with the specific provisions of the amendment. Nevertheless, the amendment must prevail. *Marks*, 815 S.W.2d at 818. Appellant has not shown that section 4 of article 37.07 and the instruction are unconstitutional. We overrule appellant's first point of error.

In points of error two and three, appellant argues that article 37 of the Texas Code of Criminal Procedure constitutes an ex post facto law. An ex post facto law is one which punishes as a crime an act which was innocent when done; makes more burdensome the punishment for a crime after its commission; or deprives one charged of a crime of any defense which may have been available at the time the act was committed. *Dobbert v. Florida*, 432 U.S. 282, 293–94, 97 S.Ct. 2290, 2298–99, 53 L.Ed.2d 344 (1977); U.S. CONST. art. I, § 10, cl. 1. Texas cases interpreting our state constitution's ex post facto provision follow the Supreme Court lead, and the court of criminal appeals has adopted the analysis of *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), in interpreting our state's constitutional proscription of ex post facto legislation. *Grimes v. State*, 807 S.W.2d 582, 583–86 (Tex.Crim. App.1991); *see also* TEX. CONST. art. I, § 16.

Article 37.07 is a procedural statute and affects no change in substantive law. *Carter v. State*, 813 S.W.2d 746, 747 (Tex. App.—Houston [1st Dist.] 1991, no pet.). Procedural statutes control pending litigation from their effective date, absent an express provision to the contrary. *Wade v. State*, 572 S.W.2d 533, 534 (Tex.Crim.App.

1978); *Hubbard v. State*, 809 S.W.2d 316, 319 (Tex.App.—Fort Worth 1991, pet. granted); *Cooper v. State*, 769 S.W.2d 301, 306 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Although a procedural change may work to the disadvantage of an accused, such changes do not violate the constitutional ex post facto prohibition. *Carter*, 813 S.W.2d at 747–48, citing *Collins v. Youngblood*, 497 U.S. at ——, 110 S.Ct. at 2720. Giving jury instructions on good conduct time and parole is permissible and does not constitute an ex post facto law even if the offense was committed before the effective date of the amendment to article IV, section 11. *See, e.g., Hawkins v. State*, 807 S.W.2d 874, 876 (Tex.App.— Beaumont 1991, pet. ref'd). The constitutional prohibition applies to laws "which make innocent acts criminal, alter the nature of the offense, or increase the punishment." *Collins*, 497 U.S. at ——, 110 S.Ct. at 2721.

Article 37 did not create a new crime, did not increase the punishment for a crime after its commission, nor did it deprive appellant of a defense. We overrule appellant's second and third points of error.

We overrule all of appellant's points of error and affirm his conviction and sentence.